UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ZURICH NORTH AMERICA (CANADA)
and WOODBRIDGE FOAM, INC.,

                Plaintiffs,                Case Number 07-13322

v.                                            Honorable Thomas L. Ludington

TRIPLE CROWN SERVICES COMPANY,

                Defendant.
_____/

## **OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs Zurich North America ("Zurich) and Woodbridge Foam Corporation ("Woodbridge," collectively "Plaintiffs") initiated this action in Saginaw County Circuit Court, seeking to recover the market value of automobile parts that Defendant Triple Crown Services Company ("Defendant") allegedly damaged during two separate shipments. On August 9, 2007, Defendant removed Plaintiffs' complaint to this Court. Plaintiffs' amended complaint seeks to recoup damages under 49 U.S.C. § 14706, otherwise known as the Carmack Amendment, which allows a shipper to hold a carrier liable for any damage sustained to a parcel during delivery.

Defendant moved for summary judgment, contending that Plaintiffs are unable to establish a prima facie claim under the Carmack Amendment. Defendant contends that Plaintiffs have not met their evidentiary burden of demonstrating that the shipments were indeed damaged. Despite Defendant's contention that Plaintiffs did not sufficiently inspect either of the allegedly damaged shipments, the Court will **DENY** Defendant's motion for summary judgment. The adjuster's photographs of the accidents and corresponding written documentation raises a factual dispute that the technically sensitive equipment was damaged to such an extent that Woodbridge's was unable to use them in conformity with its purchaser's contractual specifications.

I

Woodbridge assembles, supplies, and sequences component parts for the automotive industry. Delphi Saginaw Steering Systems ("Delphi") supplies Woodbridge with rack and pinion steering gears. Dkt. # 27 at 12. Defendant transports shipments from Delphi's Michigan plants to Woodbridge's plant in Kansas City, Missouri by tractor-trailer truck. Woodbridge incorporates the gears into "engine cradles" and sells them to Yorozu Automotive of North America ("YANA"), which incorporates the engine cradles into a "front horizontal module." *Id.* Zurich is an insurance company that insures Woodbridge for freight loss and damage claims.

Plaintiffs' complaint concerns two failed deliveries from Delphi to Woodbridge. In each case, the shipments were allegedly damaged when Defendant's delivery vehicles overturned en route to Woodbridge's plant. At the time of both accidents, Woodbridge owned the contents of the shipment. Woodbridge paid Delphi $167,257.92 for the August Shipment and $176,015.01 for the November Shipment. According to the Zurich insurance policy, Zurich covered losses in excess of $100,000.00 per incident. Thus, Zurich provided insurance payments of $67,257.92 and $76,015.01 for the respective accidents. Woodbridge remained responsible for the uninsured portion of each claim, $100,000.00. Woodbridge sold the entire content of both shipments to Delphi as scrap metal for $ 9,278.40. The parties agree on the facts underlying the two accidents.

First, on August 23, 2006, Delphi tendered a shipment of rack and pinion steering gears to Defendant for delivery to Woodbridge ("August Shipment"). When it received the goods from Delphi, Defendant issued a bill of lading that indicated the shipment was to be delivered to Woodbridge. Shortly after departing Delphi's Saginaw, Michigan plant, Defendant's tractor-trailer overturned while entering onto the interstate. Police cited the driver for excessive speed, believing

that the tractor-trailer's speed was the likely cause of the accident. Dkt. # 27-6 at 23.

Defendant's insurance adjuster documented the accident. The adjuster photographed the accident, including the gears in the trailer. *Id.* at 25. Although the reproduction of the photographs are of low quality, they illustrate that the contents of the trailer were in disarray. Dkt. # 27-5. Each photograph contains the adjuster's commentary written in the margin of the photographs. The adjuster stated that a "portion of the load in the bulkhead suggests that the product containers have been effected by the rollover." *Id.* at 3. He also noted that some of the parts had been "removed from their protective shielding" and other parts were "hanging out of or from their protective casing." *Id.* at 3-4. The adjuster also indicated that it would be "difficult to suggest a problem" with the parts unless "factory quality control" examined the parts. *Id.* at 4.

Second, on November 27, 2006, Delphi again tendered a shipment of gears for delivery to Woodbridge ("November Shipment"). Defendant issued a bill of lading indicating that Woodbridge was the consignee party. After departing the Delphi facility, Defendant's tractor-trailer overturned in Ypsilanti, Michigan. A Michigan State Trooper issued a speeding citation to the driver of this tractor-trailer. Dkt. # 27-6 at 28. Again, an insurance adjuster examined the scene and noted that "two skids appear knocked out of position." Dkt. # 27-6 at 26. The adjuster noted that the "[c]argo shifted to roof of trailer." Dkt. # 27-5 at 6.

Woodbridge emphasizes that the gears allegedly damaged in the two accidents were sensitive machinery subject to a complex, computerized certification process. *See* dkt. # 27-6 at 21. Yana's representative, Michael Good, testified that YANA considered a gear nonconforming if it did not meet the quality specifications or the gear was of an "unknown status." Dkt. # 27-6 at 18. YANA considered a gear involved in a rollover accident to be of an unknown status. *Id.* The specifications

were requirements of YANA or its purchaser. *Id.* According to the testimony, the mere fact that the parts were involved in a rollover accident required each to be re-certified. Plaintiffs maintain that YANA would not accept Woodbridge's engine cradles in the event the gears involved in either accident were incorporated unless each gear was re-certified by Delphi. YANA's representative provided the following testimony:

> Q: Based upon your capacity with [YANA], if Delphi did not inspect the parts but rather Woodbridge did, would you have accepted that certification from Woodbridge?
>
> A: Only if it was approved by Delphi.
>
> Q: So in the absence of action by Delphi with respect to inspection, you would not have accepted those parts from Woodbridge for further sequencing and assembly?
>
> A: That's correct.

*Id.* at 20. Ultimately, YANA's representative concluded that the gears were commercially unacceptable. *Id.* Plaintiffs acknowledge that neither Woodbridge nor YANA examined the gears' condition. Woodbridge emphasizes that YANA concluded that the shipments' mere involvement in roll-over accidents raised doubts concerning the quality of each gear. Thus, the parts were unmarketable without complete re-certification of each part. Consequently, Woodbridge had a contractual obligation with YANA to procure replacement shipments.

II

A motion for summary judgment under Federal Rule of Civil Procedure 56 presumes the absence of a genuine issue of material fact for trial. Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact. *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252. "[T]he party opposing the summary judgment motion must do more than simply show that there is some metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat. Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (internal citations and quotations omitted).

III

The Carmack Amendment imposes liability on a carrier when its negligence damages an interstate shipment. 49 U.S.C. § 14706. A shipper establishes a prima facie Carmack Amendment claim by demonstrating that the shipment was in good condition at the point of origin, arrived in damaged condition at the point of destination, and damages. *Plough, Inc. v. Mason and Dixon Lines*, 630 F.2d 468, 470 (6th Cir. 1980) (citing *Missouri Pacific R.R. Co. v. Elmore and Stahl*, 377

U.S. 134, 138 (1964)).

Defendant contends that Plaintiffs are unable to demonstrate that the shipment was in damaged condition. Defendant acknowledges that some of the shipment may have been damaged, but that Plaintiffs are unable to establish that the entire shipment was damaged. Woodbridge acknowledges that it did not examine the gears and that it determined that the entire shipment was damaged because YANA refused to accept the gears without re-certification of the entire shipment.

Although Defendant argues that Plaintiffs can not demonstrate the shipment did not arrive in damaged condition, the record creates a factual dispute. The record demonstrates, and the parties agree, that both shipments were involved in rollover accidents. Photographs documenting both accidents demonstrate that the shipment was in disarray and that some of the gears ejected from their packaging. This leads to the reasonable inference that the shipment sustained some damage.

Recent Sixth Circuit authority has only addressed the calculation of damages under the Carmack Amendment, not a plaintiff's burden to establish a prima facie case. *See Glenn Hunter & Assoc. v. Union Pacific R.R. Co.*, 135 F.Appx. 849, 856 (6th Cir. 2005) (holding that the shipper could recover lost profits as part of damages under the Carmack Amendment) (unpublished). Defendant advances persuasive authority for the proposition that for a plaintiff to claim an entire shipment is damaged, the plaintiff is required "to test or inspect a fair representative sampling of the shipment." Dkt. # 24 at 11 (citing *Allied Tube & Conduit, Corp. v. Southern Pacific Transp. Co.*, 211 F.3d 367, 371-72 (7th Cir. 2000). In *Allied Tube*, the plaintiff demonstrated that a shipment of pipes was damaged by conducting a "visual examination of one-third of the shipment." 211 F.3d at 371. While the plaintiff did not investigate every bundle of pipes in the shipment, the plaintiff's "close visual inspection of ten to fifteen bundles" revealed that all of those bundles sustained

damage. *Id.* at 371-72. The court noted that a sampling is sufficient to demonstrate that the entire shipment is damaged. *Id.* at 372.

In a Seventh Circuit case, the court acknowledged that "[i]t is beyond peradventure that the extent and amount of damages to an entire shipment may be extrapolated from a representative sampling." *S.C. Johnson & Son, Inc. v. Louisville & Nashville R.R. Co.*, 695 F.2d 253, 259 (7th Cir. 1982). A representative sample is sufficient for establishing the extent of damages "so long as the sample is sufficient to indicate fairly the quality, condition and nature of damage to the whole cargo." *Id.* (citation and quotation omitted). In *S.C. Johnson*, a shipment of aerosol containers was damaged from exposure to extreme temperatures. *Id.* at 255-56. Although some indication of damage was present, the plaintiff's requested amount of damages was based on "conjecture or speculation" because the amount of damage sustained while in the defendant's control was unclear. *Id.* at 261.

In a case from this district that presented similar facts, the court denied the defendant's motion for summary judgment that argued the amount of damages was speculative because the plaintiff merely conducted "a cursory, visual check of the shipment, and rejected the entire shipment without inspecting each transmission." *Logistics Insight Corp. v. JDL Trucking, L.L.C.*, 2006 WL 374752, *3 (E.D. Mich. Feb. 16, 2006) ( Gadola, J.) (Unpublished). The court found sufficient evidence to frame a factual dispute about whether the entire shipment was damaged. The court reasoned as follows:

> When considering the facts in the light most favorable to the nonmoving party, there is sufficient evidence showing that some kind of traffic accident occurred which damaged some of the transmissions. Plaintiff has provided deposition testimony revealing that when the shipment was examined at the GM plant and at the warehouse, some of the transmissions were visibly broken, that there was transmission fluid on the floor of the trailer, and that several other transmissions

> were out of the shipping cradles in which they rest during transport. Because the cost of one transmission is a definite amount that can be determined with certainty, the amount of damages in the instance of one broken transmission is not speculative. In the current case, there is evidence that several of the transmissions were damaged by the accident. Thus, the amount of damages for these transmissions that were visibly damaged can be sufficiently determined. Consequently, Plaintiff has certainly established a prima facie case of liability under the Carmack Amendment for those transmissions that were visibly damaged.

*Id.* Additionally, the Court found that sufficient evidence existed to support the plaintiff's claim that the entire shipment was damaged because of an accident with "a significantly large impact . . . traumatic enough to knock several heavy transmissions out of their shipping cradles." This inference was "sufficient for a jury to find that the integrity of the entire shipment had been compromised by the accident, and that all of the goods had been damaged." *Id.*

Here, it is undisputed that each shipment was involved in a rollover accident. Each lead to the gears being displaced. Defendant stresses that Woodbridge did not inspect any of the gears and that a cursory visual inspection did not reveal obvious damage (e.g. leaking fluid). Defendant's argument, however, relies on the notion that Plaintiffs are unable to demonstrate that *any* damage occurred. While a factual dispute exists with respect to the extent of the damage each shipment sustained, a jury could infer that a rollover accident damaged at least some the gears. Moreover, Defendant's adjuster documented that the equipment and its packaging were in disarray. In one of the accidents, some of the gears were visibly dislodged from the packaging. Photographs of the November Shipment demonstrated that the entire shipment "shifted to the roof of the trailer." The adjuster's written commentary also documents the disarray of each shipment. The adjuster's documentation in conjunction with the acknowledgment that the shipments were involved in rollover accidents demonstrates a reasonable possibility that at least portions of both shipments sustained damage. Defendant's motion should be denied for this reason.

Defendant's motion should be denied for an additional reason. At oral argument, Woodbridge emphasized that both shipments were only marketable to YANA. Woodbridge asserted that YANA would reject the shipment as non-conforming to the specifications of the contract without Delphi re-certifying the entire shipment. Indeed, the Uniform Commercial Code permits a buyer to reject an entire shipment if "the tender of delivery fail in any respect to conform to the contract." U.C.C. § 2-601. The testimony of YANA's representative supports Woodbridge's view.

"[T]he Carmack Amendment is comprehensive enough to embrace all damages resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination. Recoverable damages includes damages for delay, lost profits (unless they are speculative), and all reasonably foreseeable consequential damages." *American Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Systems, Inc.*, 325 F.3d 924, 931 (7th Cir. 2003) (internal quotation marks and citations omitted). "Within the meaning of the Carmack Amendment, actual loss or injury to the property is ordinarily measured by the reduction in market value at destination or by replacement or repair costs occasioned by the harm." *Camar Corp. v. Preston Trucking Co., Inc.*, 221 F.3d 271, 277 (1st Cir. 2000) (internal citations and quotations omitted).

Here, the shipment of gears were components specifically designed to be incorporated into a specialized mechanical system. According to the testimony of YANA's representative, Woodbridge could not tender any product to YANA in conformity with its contractual specification because the integrity of the gears were "unknown" after their involvement in the accidents. Dkt. # 27-6 at 18. Consequently, the gears were unmarketable to Woodbridge and were damaged for the purpose of the contractual agreement.

IV

Accordingly, it is **ORDERED** that Triple Crown Services Company's motion for summary judgment [Dkt. # 24] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 20, 2008

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 20, 2008.

s/Tracy A. Jacobs
TRACY A. JACOBS