UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ZURICH NORTH AMERICA (CANADA)
and WOODBRIDGE FOAM, INC.,

        Plaintiffs,                          Case Number 07-13322

v.                                                 Honorable Thomas L. Ludington

TRIPLE CROWN SERVICES COMPANY,

        Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION IN LIMINE

Plaintiffs Woodbridge Foam, Inc. ("Woodbridge") and Zurich North America's (collectively "Plaintiffs") complaint seeks monetary damages for the value of two shipments of automobile gears involved in rollover accidents during transport by Defendant Triple Crown Services Company's ("Defendant"). Plaintiffs seek to establish Defendant's liability pursuant to 49 U.S.C. § 14706, otherwise known as the "Carmack Amendment." A prima facie Carmack Amendment claim requires a plaintiff to demonstrate that the shipment was in good condition at the point of origin, arrived in damaged condition at the point of destination, and damages. *Plough, Inc. v. Mason and Dixon Lines*, 630 F.2d 468, 470 (6th Cir. 1980) (citing *Missouri Pacific R.R. Co. v. Elmore and Stahl,* 377 U.S. 134, 138 (1964)).

Defendant moved for summary judgment, asserting that Plaintiffs were unable to demonstrate that either shipment arrived in damaged condition. Defendant seized on the fact that Plaintiffs did not closely inspect either shipment to establish which parts, if any, were damaged. Plaintiffs offered photographs of the interior of the trailers taken by insurance adjusters, which document the shipments in disarray. Dkt. # 27-5. The adjusters observed that some of the gears were removed from their protective casing. *Id.* On October 20, 2008, the Court denied Defendant's

motion for summary judgment, concluding that a jury could infer damage from the shipments' involvement in rollover accidents in conjunction with evidence demonstrating that some of the gears had ejected from the packaging. Dkt. # 31.

In addition, Plaintiffs allege that the shipments' involvement in the accidents dissolves the manufacturer's quality or engineering certification, rendering the gears valueless to Woodbridge. Delphi Saginaw Steering Systems ("Delphi") manufactured the gears for Woodbridge. Throughout the manufacturing, Delphi employed a step-by-step quality control process for each gear and certified that each meets applicable standards. Woodbridge took control of the gears at the Saginaw, Michigan plant and contracted with Defendant to transport the gears to Woodbridge's Kansas City, Missouri plant. At that location, Woodbridge intended to incorporate the gears into engine cradles that it was contracted to deliver to Yorozu Automotive of North America ("YANA"), who would in turn furnish its final product to General Motors. Woodbridge contends that it was contractually obligated to only use gears with the quality or engineering certificate, as were each entity in the supply chain to General Motors.

As a result of the accidents, Plaintiffs maintain that the integrity of the gears' certification was compromised. Woodbridge contends that its contractual obligations with YANA barred it from incorporating the gears into the engine cradles without Delphi again certifying each gear. Plaintiffs offered deposition testimony of YANA's representative, Michael Good ("Good"). Good testified that YANA would not accept gears involved in the accidents because their "status" was "unknown." Dkt. # 27-6 at 18. Good also indicated that re-certification through visible inspection was likely not feasible. *Id.* at 21.

Consequently, Plaintiff seeks monetary damages for both shipments contending that

decertification of the entire load because of the risk of actual physical damage constitutes foreseeable consequential damage.  *See American Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 931 (7th Cir. 2003) (citing *Air Prod. and Chem., Inc. v. Ill. Cent. Gulf R.R. Co.*, 721 F.2d 483, 485 (5th Cir. 1983).

 On December 12, 2008, Defendant filed a motion in limine concerning Plaintiffs' evidence offered to establish physical damage to the gears.  Dkt. # 34.  Defendant seeks to preclude Plaintiffs "from presenting any expert evidence at the trial of this matter, including testimony consisting of or relating to opinions, inferences or conclusions regarding the condition of freight at issue in this case, where such evidence is based upon technical or other specialized knowledge of the witness."  Dkt. # 34 at 1.  Plaintiffs respond that they do not intend to rely on expert testimony.  Rather, Plaintiffs indicate that they will call lay witnesses "that are familiar with the value of the goods that were damaged in the rollover accidents."  Dkt. # 36 at 7.  Defendant's motion will be granted with respect to the exclusion of undisclosed expert testimony pursuant to Fed. R. Civ. P. 26(a), 37.

The pleadings and oral argument, however, identify an equally significant difference of opinion concerning the measure of damages.  Defendant contends that Plaintiffs' damage remedy is limited to the repair or replacement of the particular parts Plaintiff can identify as actually physically damaged in the rollover.  Plaintiff, on the other hand, believes that their ability to establish that even the most modest actual physical damage to the parts and their packaging destroys the required quality-control certificate and, thus, establishes their entitlement to the replacement value of the entire load of parts.

At oral argument, Defendant urged the Court to exclude testimony to this effect because the Carmack Amendment requires a plaintiff to demonstrate physical damage and decertification does

not qualify as damage to the shipment. Defendant emphasized the holding in *Design X. Mfg. v. ABF Freight Sys., Inc.*, --- F. Supp. 2d ----, 2008 WL 4820781 (D. Conn. Nov. 4, 2008), but it is ultimately inapposite. While *Design X* demonstrates that a plaintiff must establish a prima facie claim to proceed under the Carmack Amendment, it does not stand for the proposition that it requires physical damage to the shipment. In that case, the plaintiff was unable to establish that the damage to the shipment occurred under the carrier's control. *Id.* at *3-*4. In contrast, here Defendant contends that Plaintiffs are unable to establish any actual physical damage to any part or, if they can that it is limited to a relatively insignificant number of parts.

As observed in the earlier order, reasonably foreseeable consequential damages are available in a Carmack Amendment claim. Indeed, the *Design X* court acknowledges that the Carmack Amendment preempts state law "by establishing a single uniform regime for recovery by shippers directly from the interstate common carrier in whose care their items are damaged . . . ." *Id.* at *2 (quoting *Cleveland v. Beltman N. Am. Co.*, 30 F.3d 373, 383 (2d Cir. 1994)). While preempting state law, the Carmack Amendment does not restrict recovery only to "physical damage," as argued by Defendant. Nor has Defendant provided any authority in support of the proposition that the Carmack Amendment is only available for "physical damage." The Fifth, Sixth, and Seventh Circuits have acknowledged that a shipper may recover foreseeable consequential damages. *See Air Prod. and Chem., Inc. v. Ill. Cent. Gulf R.R. Co.*, 721 F.2d 483, 485 (5th Cir. 1983); *American Synthetic Rubber Corp. v. Louisville & N. R.R. Co.*, 422 F.2d 462, 467 (6th Cir. 1970) (acknowledging that recovery of special or consequential damages are possible under the Carmack Amendment of reasonably foreseeable); *American Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 931 (7th Cir. 2003).

This conclusion notwithstanding, the burden remains with Plaintiffs to establish it was reasonably foreseeable to Defendant at the time it agreed to transport the merchandise that it would be responsible for the full market value of the shipments in the event its conduct during delivery led to the decertification of the gears. This core principle of contract remedies, recognized in *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1854), requires that the carrier have "notice or knowledge of special circumstances from which such damages flow." *Marquette Cement Mfg. Co. v. Louisville & N. R.R. Co.*, 281 F.Supp 944, 948-49 ( E.D. Tenn. 1967) (applying common law principles of damages to Carmack Amendment claim) ; see also *American Synthetic Rubber*, 422 F.2d at 467 (recognizing that *Marquette Cement* correctly states "test governing recovery" of consequential damages). Thus, the Carmack Amendment incorporates the possibility of recovering consequential damages, which necessitates that those damages are reasonably foreseeable to Defendant at the time of contracting. In this instance, to recover for the diminution in the market value due to decertification, Plaintiffs will need to demonstrate that Defendant accepted a contractual responsibility for "damage" to the parts' certification as well as the physical integrity of the gears.

Accordingly, it is **ORDERED** that Defendant's motion in limine [Dkt. # 34] is **GRANTED** in part. Plaintiff may not introduce expert testimony.

                                                  s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  The United States District Judge

Dated: January 20, 2009

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 20, 2009.

        s/Tracy A. Jacobs
        TRACY A. JACOBS